


## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| JANELLA M. CRUZ, and on behalf of two minor sons J.J.M.C. (DOB: 07/02/04) and J.J.M.C. (10/21/05),<br><br>       Petitioners,<br><br>   v.<br><br>DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES<br><br>GOVERNMENT OF GUAM,<br><br>       Respondents. | Special Proceedings Case No. <u>SP0129-20</u><br><br><br><br>**DECISION AND ORDER** |

This Decision and Order memorializes the Court's ruling from the bench delivered on September 18, 2020.

In its efforts to contain the spread of COVID-19, Respondent Department of Public Health and Social Services (DPHSS) required the quarantine of unaccompanied minors and the minors' parents upon the minors' arrival in Guam.[1] DPHSS applied this policy to Petitioner Janella Cruz and her children on September 7, 2020. Upon hearing testimony from Cruz and other witnesses from DPHSS and reviewing the admitted exhibits, the Court determines that DPHSS' policy is unconstitutional as it infringes upon the fundamental liberties of persons as

---

[1] Since the Court's ruling, DPHSS has altered this policy with DPHSS Guidance Memo 2020-11 Rev8 and DPHSS Guidance Memo 2020-11 Rev9.

parents and as individuals. The Court further determines that Cruz did not voluntarily agree to quarantine and that DPHSS committed Cruz against her will, violating her due process rights.

## I.   FACTUAL BACKGROUND

On September 7, 2020, DPHSS issued Guidance Memo 2020-11 Rev7 ("Rev7") regarding quarantine procedures. Section E of Rev 7 concerns unaccompanied minors:

> Unaccompanied Minors shall complete a 14-day quarantine period at a Government of Guam Quarantine Facility, regardless of test results . . . .
>
> Parent, legal guardian, or authorized representative must meet the minor at the airport and provide photo identification in order to receive minor. The parent, legal guardian, or authorized representative will be required to sign a Voluntary Quarantine Acknowledgement form and must identify the person who will provide adult supervision and remain with the minor while at the Government of Guam quarantine facility.

Rev7 at 6 (admitted as Ex. C).

Hours before it issued Rev7, on September 7, 2020, Cruz's two minor sons, JJMC and JJMC, arrived on Guam as unaccompanied minors on a flight from Saipan. Cruz testified that prior to her sons' arrival, she contacted DPHSS three times, once on August 24, 2020, and twice on September 2, 2020. Cruz testified that, on those calls, DPHSS informed her that if JJMC and JJMC arrived with acceptable COVID-19 tests, they may quarantine at home, subject to DPHSS' visitation and inspection of the home. Cruz, a licensed nurse, and her husband, a respiratory therapist, prepared their home for home quarantine. Cruz contends that the children would be able to successfully quarantine at home as each of their sons have a bedroom and share a bathroom separate from their parents. They can also access the kitchen separate from their parents.

Upon the minors' arrival, an airport police officer escorted Cruz and her husband into a

secured area where DPHSS officials were holding JJMC and JJMC. Cruz noticed that JJMC and JJMC were filling out forms and seemed confused about the forms. A DPHSS official informed Cruz that JJMC and JJMC have to be transferred to a government facility for a 14-day quarantine. He further informed Cruz that either she or her husband must enter quarantine with her sons or they would be placed with strangers. According to the testimony of DPHSS Director Arthur San Agustin, if the parent of an unaccompanied minor refuses to enter into quarantine, child protective services assumes custody of the child. Cruz entered quarantine with her children rather than have her children be placed under the custody of strangers.

The officer provided Cruz with a Voluntary Quarantine Letter and other forms. Cruz testified that she could not read or complete the form because the officer rushed her and her sons in order to get them on the bus with the other passengers headed for the government quarantine facility. The letter, Ex. B, did not explain how to object to voluntary quarantine; how to object to the separation from her children; or how to seek counsel or that she had the right to counsel.

Upon her entry into quarantine, Cruz continually tried to plead with DPHSS but was informed that they could not leave. On the sixth day of her quarantine and after she retained an attorney and filed this lawsuit, DPHSS issued Cruz a directive explaining that her quarantine will last until September 21. The directive advises her of her right to counsel.

Because of their quarantine, the minors have been unable to register for or attend school.

## II.    **LAW AND DISCUSSION**

Cruz brought this petition on the grounds of 10 GCA §§ 19605(a) and (b) violations. Section 19605 provides the procedures for isolation and quarantine during a public health emergency. The Court determines, however, that it need not decide whether DPHSS violated

section 19605 because other grounds exist in Cruz's favor. Specifically, Cruz has a fundamental right to her liberty above Guam law and regulations; the right to her liberty derives from the Fourteenth Amendment's Due Process Clause. The Court finds that section E of Rev7 violates Cruz's due process rights with respect to her status as an individual and her status as a parent.

## A. Whether Cruz Falls Under Guam's Quarantine Laws

As an initial matter, Rev7 references 10 GCA § 3333, "Restricting Entry Into Guam," as the authority justifying restricted entry into Guam during an outbreak or pandemic. However, Cruz did not enter Guam on September 7 and therefore section 3333 does not apply to her. Accordingly, Cruz is confined not as an incoming passenger but as a civilian resident of Guam with children.

## B. Constitutional Issues

Due process under the 14th Amendment takes two forms: substantive due process and procedural due process. The Court now examines whether due process occurred under either framework.

### 1. Substantive Due Process

Substantive due process concerns the adequacy of the government's reason for depriving a person of liberty. *See In re Guardianship of Moylan,* 2017 Guam 28 ¶ 37. Substantive due process protects fundamental rights and liberties which are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty . . . . [W]e have required in substantive due process cases a careful description of the asserted fundamental liberty interest." *Guam Elec. Comm'n v. Responsible Choices for All Adults Coalition,* 2007 Guam 20 ¶ 86 (citing *Washington v. Glucksberg,* 521 U.S. 702, 720 (1997)).

In this case, the fundamental right at issue is Cruz's right to parent her children. "The right to parent is a fundamental liberty interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution." *Coffey v. Gov't of Guam*, 1997 Guam 14 ¶ 7. This interest includes the fundamental right to make decisions concerning the care, custody, and control of one's children. *Troxel v. Granville*, 530 US 57 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Quilloin v. Walcott*, 434 U.S. 246 (1978); *see also Coffey v. Gov't of Guam*, 1997 Guam 14 ¶ 7.

"As a fundamental right it is afforded great protections from state interference." *Coffey*, 1997 Guam 14 ¶ 7. The right to rear children without undue governmental interference is a fundamental component of due process. *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 951 (9th Cir. 1997) (citing *Ginsberg v. New York*, 390 U.S. 629, 639 (1968)). Moreover, substantive due process under the Fourteenth Amendment forbids the government from infringing on certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling government interest. *Nunez by Nunez*, 114 F.3d at 952. Such a showing must be made by clear and convincing evidence. *Coffey*, 1997 Guam 14 ¶ 8.

Without a doubt, containing COVID-19 is a compelling state interest. By the latest tallies, Guam is experiencing a rise in COVID cases and, at the time Cruz was in quarantine, the Governor had placed Guam under the highest level of condition of readiness. Ex. E. According to DPHSS' Containment Lead, Chima Mbakwem, arriving passengers brought the virus to the island and transmitted it across the island community.

DPHSS' solution is the mandatory quarantine of travelers, including unaccompanied minors. Rev7 takes the hardline approach of forcing the minors into quarantine, commanding

the parent to "remain with the minor" in quarantine, and requiring the parent to sign a "Voluntary" Quarantine Acknowledgement whereby they agree to be monitored for symptoms. Although not stated in Rev7 but confirmed by San Augstin, the alternative is Child Protective Services takes custody of the children. Dictating where parents must house their children, subjecting them and their children to daily monitoring, and confining their movements directly infringe on the parent's fundamental liberty interest over the care, control, and custody of the children.

In offering no exceptions to mandatory quarantine and no chance for a parent to explain how a home quarantine may be more appropriate, Rev7 fails to be narrowly tailored. What a parent decides is in a child's best interests must be taken into account in any government regulation. For example, in *Troxel*, the U.S. Supreme Court ruled unconstitutional a Washington statute that disregarded a fit parent's decision over who could have visitation with a child and substituted, in its place, a court's determination of the child's best interests. 530 U.S. at 67. *See also Nunez by Nunez* 114 F.3d at 952 (holding that the City of San Diego's imposition of a curfew over minors constituted an improper sweeping state control irrespective of parent's wishes).

There are many reasons why a home quarantine of the Cruz minors is in their best interests. First, because they have been in mandatory quarantine, Cruz has been unable to register them for school. Since the school year started, the minors have not received an education. Second, Cruz and her husband work in health care and have a heightened understanding of the necessary safeguards to avoid transmission of COVID-19 within their household. If either of them caught COVID-19, they would be unable to work so it was

imperative on them to maximize precautions.[2] None of these factors were taken into consideration by DPHSS; instead, DPHSS ignored their pleas.

In their interpretation of the Constitution, the courts "long ago rejected any notion that a child is the mere creature of the State." *Parham v. J.R.,* 442 U.S. 584, 602 (1979). However, Rev7 treats unaccompanied children exactly as creatures of the State--with DPHSS representing that it has the ultimate authority to dictate where and with whom children must stay without consulting the parents. Such a policy denotes that DPHSS, as opposed to the parents, is better suited to determine what is in the children's best interests and accommodates no tailoring whatsoever. That approach runs directly contrary to the protection of the fundamental parental interests long supported by the Constitution and local and federal courts. The Court therefore holds that Rev7's policy applied to unaccompanied children violates parents' substantive due process rights and is unconstitutional.

### 2. **Procedural Due Process**

A separate consideration under due process concerns procedural aspects. In general, procedural due process mandates that a person receive fair notice of a state action and an opportunity to be heard prior to the deprivation of a fundamental right. *Castro v. G.C. Corp.,* 2012 Guam 6 ¶ 23.[3] As part of the procedural due process protections afforded to parental rights, parents and children are entitled to a court proceeding before they are separated by the

---

[2] Because of her quarantine, Cruz was unable to start a new job.

[3] There is a formal three-part test for procedural due process questions, which involves weighing the liberty interest against the risk of an erroneous deprivation of such interest through the procedures used and the value of additional safeguards and the Government's fiscal and administrative burdens. *Carlson v. Perez,* 2007 Guam 6, ¶ 35 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)). This three-part test, otherwise known as the *Mathews* procedural due process test, has been extended to parental rights cases. *Santosky v. Kramer,* 455 U.S. 745, 754 (1982). However, because no notice or due process procedures were offered to Cruz, procedural due process issues can be addressed simply by examining the basics of whether there was notice and a hearing.

government. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) ("As a general rule, therefore, before parents may be deprived of the care, custody or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them."). The Fourteenth Amendment's Due Process Clause also guarantees that parents will not be separated from their children for an extended period without due process of law unless the child is in imminent danger. *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).

If a pre-separation hearing is impractical and the child is already in the state's custody, the state has a duty to initiate a prompt post-deprivation hearing after the child has been removed from custody. *See, e.g., Hollingsworth v. Hill*, 110 F.3d 733, 739 (10th Cir. 1997); *Estiverne v. Esernio-Jenssen*, 833 F. Supp. 2d 356, 371 (E.D.N.Y. 2011) (citing *Kia P. v. McIntyre*, 235 F.3d 749, 760 (2d Cir.2000)). Notably, however, even a temporary separation can be a grave deprivation of liberty. *See Stanley*, 405 U.S. at 647 (even the shortest deprivation of parental custody results in the suffering by children of dislocation and uncertainty). Guam law itself promotes maintaining the parent-child relationship whenever possible. *See, e.g.,* 19 GCA § 4303 (in parental right termination proceedings, "wherever possible family life should be strengthened and that the issue of severing the parent-child relationship is of such vital importance as to require a judicial determination in place of attempts as severance by contractual arrangements, express or implied, for the surrender or relinquishment of children").

The Court first addresses the issue of notice. Using the 311 hotline, Cruz called DPHSS before her children's arrival and understood that they could quarantine at home. She was not

given notice that they would be subject to mandatory quarantine. Rev7, which mandates that a parent or relative quarantine with children, was not issued until hours after Cruz's children arrived. She was therefore not given advance notice that her children would be subject to mandatory quarantine or that she or her spouse would also be subject to quarantine.

Cruz also signed a Voluntary Quarantine Letter under the pressure of DPHSS officials. Ex. B. She had no opportunity to read and understand the letter or to ask questions. She also was given no opportunity to ask about possible alternatives. In summary, she had no notice prior to her quarantine that she or her children would be required to quarantine.

Turning to whether Cruz had an opportunity to be heard, Cruz received no information from DPHSS about her rights to a hearing before or even after being placed in quarantine; nor was she informed of her right to petition the Court or to seek counsel. The Court finds that when DPHSS mandated the seizure of the Cruz minors, Cruz should have had an opportunity to be heard by a tribunal addressing why the government had a compelling interest to take custody of her children and to demonstrate that its conduct in quarantining her children was narrowly tailored. Instead, DPHSS offered her no chance to explain how she could take care of her children in her own home in a safe manner. Moreover, DPHSS did not petition any court or inform her of her right to seek counsel to address the violation of her fundamental liberty interest in having custody of her children.

Aside from her parental rights, Cruz holds rights to her individual liberty. As this Court recently explained in *Igros v. DPHSS*, SP0127-20, persons under mandatory quarantine under EO2020-29 and Rev7 did not receive directives under 10 GCA § 19605(a) nor did DPHSS petition the court to mandate their quarantine under 10 GCA § 19605(b). The Court ruled that

by not following those procedures, DPHSS violated their due process rights. The same applies to Cruz.

Also, as previously explained, Cruz was never an incoming passenger, so she did not fall under 10 GCA § 3333, Title 10, Chapter 19, Article 6, or Rev7. She was a civilian forced to make the inconceivable choice of surrendering her kids to CPS or forsaking her freedom. In a sense, she entered not quarantine--as DPHSS had no reason to quarantine her other than to accompany her children--but civil commitment. Under Guam's civil commitment laws for persons who are involuntarily hospitalized, a petition must be filed before a court within 72 hours of commitment, a court hearing must be held within two judicial days thereafter, and legal counsel is appointed by the court. 10 GCA Ch. 82.

Unlike a person involuntarily hospitalized, Cruz was given no hearing, no counsel, and no information about her rights. So regardless of whether Cruz is seen as a parent who may potentially lose custody, a quarantined passenger, or a person civilly and involuntarily committed, she deserved due process protections. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). It is clear that in this case, when DPHSS gave Cruz no chance to appear before a court or speak with an attorney nor an understanding of her rights, DPHSS afforded Cruz less than the minimum of procedural due process protections.

## III.   CONCLUSION AND ORDER

The Court finds that DPHSS did not secure the voluntary consent of Cruz to quarantine or to be deprived of the custody of her children. Because she was not an arriving passenger, she is not covered under the statute that the Government of Guam used to mandate her quarantine.

When she entered quarantine involuntarily, DPHSS offered her no information as to the scope of her rights to challenge her custody or the right of DPHSS to mandate the quarantine of her children over her preference for home quarantine; it did not petition the Court for her confinement; and it did not advise her of her rights to a prompt hearing to be appointed counsel. Moreover, she did not consent to DPHSS' seizure of her children in quarantine nor did she have an opportunity to explain her preference as to the handling of the custody of her children. For at least ten days, she was confined against her will without a meaningful and prompt opportunity to be heard regarding such confinement and not advised of her right to counsel.

In light of the foregoing violations, the Court holds that Rev7 Section E violated Cruz's constitutional rights to due process. Not only has DPHSS failed to demonstrate that its procedure as applied to the children's quarantine is narrowly tailored to accommodate Cruz's fundamental rights and the state's compelling interest in controlling the pandemic, but it also did not give her an opportunity to be heard in court about the custody of her children. Without such evidence, the Court finds that it is not reasonably necessary to quarantine unaccompanied children.

DPHSS is therefore enjoined from quarantining Cruz or her children at a government facility.

At a later time, the Court will issue an order for briefing concerning Cruz's request for attorney's fees.

SO ORDERED this 24th day of September 2020.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam